(56 Misc. Rep. 557.)

### JOSIAS v. NIVOIS.

(Supreme Court, Appellate Term. November 29, 1907.)

WITNESSES—TESTIFYING FROM MEMORANDUM.

In an action to recover commissions under a contract of employment by which plaintiff was to receive 5 per cent. on all sales of defendant's patent chronographs, evidence by the president of three corporations which were manufacturing and selling the chronographs that a memorandum in his possession shows that such corporations disposed of 16,409 chronographs was inadmissible, where the memorandum was not made by the president at the time of the sales, and he did not make the sales, or have any personal knowledge regarding them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 877, 878.]

Appeal from City Court of New York.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Harry L. Herzog (Moses Cowen, of counsel), for appellant.
Herbert R. Limburg, for respondent.

ERLANGER, J. The plaintiff was awarded a verdict in an action brought to recover commissions claimed to have been due his assignor

for services rendered under a contract of employment. The defendant is the owner of a patent stop watch attachment. Plaintiff's assignor, Simon Goldsmith, claims that he was employed to sell chronographs for defendant on a commission of 5 per cent. on all sales, whether made by him or by any person acting for defendant or having the right to manufacture and sell the chronographs. The defendant, admitting the employment, contends that Goldsmith was to receive a commission only on sales made or effected through him, and that he had been fully paid for such sales, excepting the sum of $180, being the amount of commissions on sales made by plaintiff's assignor, but collected since the termination of their relations. The issue presented was whether the defendant agreed to pay Goldsmith, not only a commission on sales which he made, but on sales with which he had absolutely nothing to do, and, indeed, which were made by third parties, who had simply acquired a license to use defendant's patent in connection with the manufacture of watches.

· Plaintiff's case rests entirely upon his own testimony. The commissions were paid monthly. When the first payment was made, on February 11, 1905, a statement was prepared, setting forth in detail the names of the parties to whom sales had been made and the sums collected, and underneath the total was the percentage stated, "5%," and a computation showing the amount due to be $32.17, below which was the following, in the handwriting of the plaintiff:

"Commission on sales expires by mutual agreement on December 15, 1905. Bills remaining unpaid on that date still entitled to same commissions to be paid to me as soon as received, and on all sales that I make and accepted by Victor Nivois up to December 15, 1905.

"Wit.:  S. L. Johnston.                    Simon Goldsmith."

Prior to the signing of this paper, and on July 13, 1904, defendant entered into an agreement with the New York Standard Watch Company, by which that company was to manufacture, sell, and deliver to defendant 100,000 watch movements with stop watch attachments under the patent owned by defendant, for $3.35 each for the seven-jewel movement, and $3.75 each for the ten-jewel movement. Of this company one Zurbrugg was president. He was also president of a corporation known as the "Keystone Watch Case Company" and of the Philadelphia Watch Case Company. On December 30, 1904, a license was granted by defendant to the Keystone Company (which recited the agreement of manufacture made with the Standard Company), granting to that company a license to use the patented attachment for export business only, on a royalty of 50 cents to defendant on each watch movement sold by the Keystone Company; and on January 25, 1905, a similar license was granted to the Philadelphia Watch Case Company. It should be noticed that these three agreements antedated the paper writing executed by Goldsmith. In December, 1905, when the final monthly statement was rendered of sales made by Goldsmith, upon which he received his commissions, he claimed commissions on the export sales made by the Keystone and Philadelphia Companies and all sales made by defendant. His right thereto being disputed, he assigned his claim to the plaintiff, who commenced this action.

It does not appear that prior to December, 1905, when the last pay-

ment of commissions then due Goldsmith was made, he demanded or claimed to be entitled to commissions on the export sales made by the Keystone and Philadelphia Companies under their licenses. While Goldsmith testified that, embraced in the monthly statements itemizing the sales made and upon which the 5 per cent. commission was calculated, there were included sales not made directly by him, it appears that in those instances the names of such customers appeared upon a list which he submitted to defendant, and thereafter, when any sales were made through correspondence by defendant with persons on such list, the commission was allowed by defendant and included in the sales upon which the monthly calculation was made. There seems to have been no discussion on the subject between the parties, but the defendant assumed that plaintiff's assignor was entitled to a commission whenever a sale resulted from correspondence with a person on the list of possible customers furnished or submitted to him by Goldsmith. There is no explanation made by Goldsmith why, during the entire period of employment, he made no demand or claim for commission upon the export trade of defendant's licensees, and the only explanation made of the paper writing of February 11, 1905, which limits the commissions to sales made by Goldsmith, is that he was forced to sign the paper, but without any very clear explanation of the nature of the coercion used.

When it is considered that the writing above quoted is Goldsmith's own phrasing, and that the body as well as the signature are in his handwriting, and that no objection was raised to its form intermediate its execution in February and the termination of the relations in December, it would seem that the plaintiff should have sustained the claim of Goldsmith having been "forced" to execute the paper by some fact or circumstance in addition to Goldsmith's general statement that his act was not voluntary. In addition to the defendant's evidence, the witness to the writing, Sadie L. Johnston, who at the time of the trial was no longer in defendant's employ, fairly met Goldsmith's statement that he was driven or "forced" to sign the paper. Under the licenses which defendant granted to the Keystone and Philadelphia Companies, he had no control over the sales made by those companies, receiving simply a royalty of 50 cents on each watch movement sold by them; and yet plaintiff's claim for commissions is founded, not upon the royalty, but upon the selling price of the chronographs at the rate of $3.35 on the seven-jewel movement, and $3.75 on the ten-jewel movement. As the defendant's royalty from the Keystone and Philadelphia Companies was only 50 cents on each movement sold, irrespective of whether it was a seven-jewel or ten-jewel movement, if Goldsmith's story is correct, he was to receive about one-third of the amount realized by his employer, and this, too, on licenses granted without any assistance from him and on sales effected by the licensees.

It is not necessary for us to determine whether the plaintiff made out his case by that fair preponderance of evidence which is required to sustain a verdict, because of errors committed by the trial justice to which reference will be made. Neither is it necessary for us to

determine on this appeal whether the paper writing of February 11, 1905, embodies all the elements of a contract, so as to exclude the parol evidence offered by plaintiff, contradictory of the writing. It may be mentioned, however, that the contention of the respondent that the writing on its face indicates that the parties did not intend thereby to completely set forth all the terms of the employment, because it did not specify the rate of commission, nor the term of the hiring, overlooks the account, which precedes the writing above quoted, but is part thereof, showing that the commission is figured at 5 per cent., and that the term expires on December 15, 1905. But, if it was not a binding contract, it is very persuasive evidence that the parties understood that the commissions were to be paid only on the sales made by Goldsmith.

It was essentially a part of plaintiff's case to prove the number of sales of chronographs made by the Keystone and Philadelphia Companies, in order to fix the amount of the commissions upon which plaintiff founded his right to recover. For that purpose he read in evidence the deposition of Zurbrugg taken at plaintiff's instance. Zurbrugg was asked to state how many chronographs were manufactured by the New York Standard Watch Case Company up to December 15, 1905, and how many of said chronographs of seven jewels and how many twelve-jewel chronographs had been sold, and to whom they had been delivered. To this the witness answered:

"I have a memorandum according to which the New York Standard Company sold to Victor Nivois, up to December 15, 1905, 12,896 chronographs; up to the same date, to the Philadelphia Watch Case Company, 2,177; the Keystone Watch Case Company, 1,396. I do not know how they were divided as to jewels. There have been some manufactured since that, but I could not say how many. I have not the faintest idea."

A proper objection was made, both to the interrogatory and to the answer, and a motion was made to strike out the answer, which was denied, and an exception was noted to the court's ruling. It is quite evident, from the witness' answer, that he was simply reading from a memorandum. Undoubtedly, a witness may, while under examination, refresh his memory by referring to any writing made by himself at the time of the transaction concerning which he is questioned, or so soon afterwards that it is probable that the transaction was at that time fresh in his memory (Stephen's Digest of Evidence, art. 136); and he may use a memorandum, no matter by whom or when made, to refresh his recollection, if, after refreshing his recollection, he can testify from memory (Howard v. McDonough, 77 N. Y. 592; Rathborne v. Hatch, 80 App. Div. 115–118, 80 N. Y. Supp. 347; Wise v. Phenix Fire Ins. Co., 101 N. Y. 637, 4 N. E. 634). But here the witness did not testify from memory, nor use the memorandum to refresh his recollection. It did not appear that he made the sales, or had any personal knowledge regarding them. His evidence would indicate that he had no personal knowledge concerning the sales, because he had not "the faintest idea" how many chronographs had been manufactured since December 15, 1905, and did not know how those which were sold prior to that date were divided as to jewels. He simply testified that he had a memorandum according to which the

Standard Company had made sales in the amount stated by him, without proof of the correctness of the items.

The injury to the appellant through this error of the learned trial justice is intensified, when the record is examined and found to be barren of any other evidence of the amount of sales made by these various companies, and upon which a recovery was secured. The plaintiff's assignor on his cross-examination, stated that other than the sales made by himself, concerning which there was no dispute, he only knew of the sales by the defendant's licensees from information furnished him by Mr. Zurbrugg, to whose deposition we have referred. Indeed, the trial justice thought that "there should appear better evidence than the witness (Goldsmith) has given upon this point upon the number of sales by each of these concerns." On objection made, he stated that the testimony of Goldsmith as to these sales was simply based on statements made by Zurbrugg in his deposition, and that it was quite evident, from the cross-examination of the witness, that he could not give any testimony, other than by hearsay, on the subject of the sales made by the Standard, Keystone, or Philadelphia Companies. The verdict, therefore, rested entirely upon the evidence of Zurbrugg, which was erroneously admitted.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.

LEVENTRITT, J., concurs. GILDERSLEEVE, P. J., concurs in result.